IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| EDITH R. DOYLE, ) | CIVIL ACTION 4:12-cv-01316-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN,[1] ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**PROCEDURAL HISTORY**

Edith R. Doyle ("Plaintiff" or "claimant") filed an application for DIB on November 28, 2005, alleging an inability to work since May 30, 2005. Her applications were denied at all

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was held before an Administrative Law Judge ("ALJ") who found Plaintiff not disabled under the ACT. (Tr. 70-79). The Appeals Council remanded the case for further consideration. The ALJ held a second hearing by way of video on August 18, 2010, and issued an unfavorable decision on September 17, 2010, finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on May 18, 2012.

## FACTUAL BACKGROUND

The Plaintiff was born on March 20, 1961, has at least a high school education, and past relevant work as a patient specialist, a department manager, and a pharmacy technician.

## DISABILITY BACKGROUND

The Plaintiff's arguments consist of the following, quoted verbatim:

(1) Whether the ALJ erred in concluding Plaintiff's irritable bowel syndrome was a non-severe impairment.

(2) Whether the ALJ erred in concluding Plaintiff's depression and anxiety were non-severe impairments.

(3) Whether the ALJ erred in failing to find that Plaintiff's chronic fatigue syndrome was a severe impairment.

(4) Whether the ALJ erred in failing to attribute significant functional and non-exertional limitations as a result of Plaintiff's migraines.

(5) Whether the ALJ erred in failing to attribute reaching, handling and manipulating limitations as a result of her severe left upper extremity impairment.

      (6)      Whether the ALJ erred in concluding Plaintiff's subjective allegations of pain and other disabling symptoms was only partially credible without explaining which allegations were credible.

      (7)      Whether the ALJ erred in disregarding the statement of Dr. Tercheck[sic], Plaintiff's treating Rheumatologist, in violation of the treating physician rule.

      (8)      Whether the ALJ erred in disregarding the statement of Dr. Eugene Giddens, Plaintiff's treating neurosurgeon, in violation of the treating physician rule.

      (9)      Whether the ALJ erred in exclusively relying on the Grids, not withstanding Plaintiff's significant non-exertional limitations.

(Plaintiff's brief).

In the decision of September 17, 2010, the ALJ found the following:

      1.      The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

      2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 30, 2005, through her date last insured of December 31, 2009 (20 CFR 404.1571 *et. seq.*).

      3.      Through the date last insured, the Claimant had the following severe impairments: fibromyalgia, degenerative disc disease, migraines, and left upper extremity problems. (20 CFR 404.1520(c)).

      4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

      5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to: sit, stand, and walk each for 6 hours of an 8-hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; no more than occasional climbing of ramps/stairs,

>  balancing, stooping, kneeling, crouching, and crawling; and no climbing of ladders. She would be further limited to simple, routine, repetitive tasks.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work  (20 CFR 404.1565).
>
> 7. The claimant was born on March 20, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Through the date last insured, considering claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 30, 2005, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(g)).

(Tr. 19-26).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to:  (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling

law.  Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390.  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).   The Court's scope of review is specific and narrow.   It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five questions are to be asked sequentially during the course of a disability determination.  20 C.F.R. §§ 404.1520, 1520a (1988).  An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). <u>Hall v. Harris</u>, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a <u>prima facie</u> showing of disability by showing she was unable to return to her past relevant work. <u>Grant v. Schweiker</u>, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. <u>Id</u>. at 191.

## **ARGUMENTS AND ANALYSIS**

<u>Treating Physician's opinion</u>

Plaintiff argues that the ALJ erred in disregarding the statements of Dr. Terchek, her treating Rheumatologist, and Dr. Giddens, her treating neurosurgeon, in violation of the treating physician rule. Plaintiff contends that the ALJ's justification for disregarding her physician's opinions is not supported by substantial evidence. Plaintiff asserts the ALJ did not discuss the long-standing treatment relationship Dr. Terchek had with Plaintiff, and discredited Dr. Terchek's opinion based on the fact that Dr. Bangco had noted normal gait failing to discuss the fact that the opinions of Dr. Tercheck were consistent with Dr. Bangco's treatment for migraine headaches, chronic pain, and restless leg syndrome. Further, Plaintiff argues that the ALJ erred in disregarding the opinion of Dr. Giddens, her Neurosurgeon, finding it was based primarily on Plaintiff's subjective symptoms when his opinions were based upon X-rays and MRI results and consistent with the record as a whole.

The Commissioner argues that the ALJ's decision is supported by substantial evidence. Defendant asserts that the ALJ gave weight to Dr. Terchek's opinion in part, as he acknowledged that Plaintiff's pain would interfere with her concentration limiting her to only simple, routine tasks, but disagreed with Dr. Terchek's opinions concerning the extent of Plaintiff's limitations. Defendant contends that Dr. Terchek's opinions were not consistent with the treatment record and relied on unduly subjective claims. As to Dr. Giddens' opinion, the Defendant asserts the ALJ was correct in discounting his opinion as to her functional limitations as he did not provide narrative comments justifying his proposed limitations and his opinion was not entitled to the same weight as a long-time treating physician because he treated her only a limited number of occasions.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is

given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(d)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(d)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Furthermore, 20 C.F.R. § 404.1527(d)(2) states: "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96-2p requires that "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear

8

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

In the ALJ's decision, he found the following with regard to the medical opinions:

> I accord less than controlling weight to Dr. Terchek's opinion from June 2008 that the claimant is not capable of performing any work and that she was not capable of ambulating effectively. (Exhibit 20F). The treating physician's opinion is more a vocational opinion than a medical opinion. Additionally, the doctor's assessment was based primarily on the claimant's subjective symptoms, which, for reasons stated in detail above, are not reliable. Dr. Terchek's assessment that the claimant's symptoms included the inability to ambulate effectively and memory loss is not consistent with Dr. Bangco's treatment notes documenting the claimant's normal gait and intact memory on numerous occasions. Additionally, the doctor's assessment was devoid of any significant explanation, rationale, clinical findings, or reference to objective testing. Dr. Terchek's opinion is also inconsistent with the claimant's own report that she is able to drive, perform household chores, attend church, volunteer, and socialize. (Exhibits 4E, 7E and 23F). I do accord some weight to Dr. Terchek's finding that the claimant's pain would frequently interfere with concentration and attention, but only to the extent that it would limit the claimant to simple, routine, repetitive tasks.
>
> I have also considered Dr. Giddens' assessment from August 2010 that the claimant was capable of working only 4 hours of an 8-hour day with no bending or stooping. (Exhibit 37F). I accord less than controlling weight to this opinion. While the doctor does have a treating relationship with the claimant, the treatment history is quiet brief as he examined the claimant on only two occasions in July 2010 and did not have the benefit of a longitudinal treating relations with the claimant. The doctor's assessment was based primarily on the claimant's subjective symptoms, which, for reasons stated above, are not reliable. Additionally, the doctor's assessment was devoid of any significant explanation, rationale, clinical findings, or reference to objective testing. The lack of substantial support from the other objective evidence of record renders the opinion less persuasive.
>
> Regarding the opinions of the DDS medical consultants, I generally accord them significant weight as their opinions are generally consistent with the other evidence of record. (Exhibits 6F, 7F, 12F, and 13F). However, I accord little weight to Dr. Joseph Gonzalez's

> assessment that the claimant should avoid even moderate exposure to hazards as this limitation is not supported by the evidence of record. (Exhibit 7F).

(Tr. 23-24).

Thus, the ALJ gave little weight to Dr. Terchek's opinion that Plaintiff was not capable of performing any work, and that she was not capable of ambulating effectively because "the assessment was based primarily on the claimant's subjective symptoms which he did not find reliable." (Tr. 24). Additionally, the ALJ found that Dr. Terchek's assessment was not consistent with Dr. Bangco's treatment notes documenting that Plaintiff had normal gait and intact memory. However, the ALJ did not discuss the fact that Dr. Terchek was Plaintiff's longtime treating Rheumatologist, a specialist. In addition, the ALJ did not note that Dr. Terchek's opinion was consistent with Dr. Bangco's treatment for migraine headaches, chronic pain, and restless leg syndrome. Additionally, the ALJ found that Dr. Terchek's opinion was "devoid of any significant explanation, rationale, clinical findings, or reference to objective testing." However, throughout the office notes, there is evidence of objective testing to include, but not limited to, diffuse decrease in power with force maneuvers, diffuse stiffness on range of motion, positive straight leg raises bilaterally, 18/18 tender trigger regions, triggering in the paraspinal muscles, and stiffness on range of motion in all extremities with diffuse decreased power secondary to pain on forced maneuvers. (Tr. 585, 673). Additionally, throughout the notes blood work was ordered revealing a positive ANA with significant titer. (Tr. 566, 567, 569). Also, Dr. Terchek noted that she had increased and/or continued diarrhea (Tr. 573, 578) and an increase in headaches reporting having headaches everyday. (Tr.576). Plaintiff was on two medications for her headaches. Dr. Terchek's June 2, 2008, treatment note stated the following, in part:

> 46 year old white female with fibromyalgia syndrome unimproved despite multiple therapeutic interventions. Recently, she completed Supartz therapy for her knees and epidural injections for her spine. Ms. Doyle currently has worsening arthralgias, myalgias, dysphoria and fatigue, and frequent difficulty with memory and concentration. She is unlikely to tolerate gainful employment permanently. I advised her to increase her lyrica therapy as tolerated.

(Tr. 674).

Dr. Terchek also completed a Medical Source Statement indicating severe symptoms, explaining that Plaintiff was not a malingerer, that Plaintiff had chronic pain, and had postural limitations. (Tr. 670). Dr. Terchek also indicated Plaintiff was limited to using her left hand for repetitive grasping, turning, and twisting objects for 20 percent of the time and could only reach overhead for 20% of the time. Dr. Terchek also limited Plaintiff to no fine manipulations of the fingers. Dr. Bangco also noted that Plaintiff had "sensory-diminished pinprick median distribution of the left hand." (Tr. 890). Additionally, the ALJ noted Plaintiff's complaints of difficulty with her left upper extremity in January 2006 and reported dropping things and being unable to raise her arm about shoulder level concluding it was resolved by April 2006 as "Dr. Sloan noted that on examination the claimant was able to raise her left arm above her shoulder (Exhibit 8F)." (Tr. 22). However, the ALJ did not note that Plaintiff was unable to abduct or invert. (Tr. 477).

The ALJ also discounted the opinion of Plaintiff's treating Neurosurgeon, Dr. Eugene Giddens. Dr. Giddens opined in August 2010 that Plaintiff was capable of working only four (4) hours of an eight (8) hour day with no bending or stooping. (Tr. 892). He opined Plaintiff could only stand for thirty (30) minutes at a time, sit for sixty (60) minutes at a time, and could only lift five (5) pounds on a frequent basis. (Id.). The ALJ discounted Dr. Giddens' opinion reasoning it was based primarily on Plaintiff's subjective complaints and was "devoid of any significant explanation,

11

rationale, clinical findings, or reference to objective testing. The lack of substantial support from the other objective evidence of record renders the opinion less persuasive." (Tr. 24). However, Dr. Giddens was Plaintiff's treating Neurosurgeon and cited to the results of X-rays and MRI's in his notes. (Tr. 887, 888). Further, Dr. Giddens suggested surgery stating in his notes that "[she has been through extensive physical therapy. She has been though a number of ESIs. We have talked about possible surgery which would likely involve two or three-level decompression and fusion versus spinal cord stimulator versus leaving things alone. For now she would like to not pursue this any further. She will let me know if she changes her mind." (Tr. 888). The ALJ also discounted the medical opinion of the DDS medical consultant, Dr. Joseph Gonzalez who opined Plaintiff should avoid even moderate exposure to hazards. (Tr. 24).

The only evidence of record the ALJ appears to rely on was that of Dr. Bangco who noted in his office notes that her gait was normal and her memory and concentration intact. However, Dr. Bangco also treated Plaintiff for chronic pain syndrome, restless leg syndrome, and headaches.

The ALJ did not conduct a proper analysis of the treating and consulting physicians' opinions. There is no analysis of the treatment relationship and history of Plaintiff and Dr. Terchek, her treating specialist. No other physician had the type of treatment history with Plaintiff as Dr. Terchek. The ALJ did not contrast Dr. Terchek's area of specialty and Dr. Giddens' area of specialty with the qualifications of the other physicians.[2] In summary, this court concludes that reversal and remand are necessary to allow the fact finder to evaluate the opinions of the physicians under the regulatory standards set forth in § 404.1527(c). To the extent that deference is not provided to the

---

[2] The combination of Dr. Terchek's length of treatment history and the level of specialization of both Dr. Terchek and Dr. Giddens can be probative under the standards of the Treating Physician Rule.

opinions of the treating physicians, the ALJ must evaluate the opinions under the § 1527(c) standards and articulate good reasons for rejecting the treating physicians' opinions. Proper application of the Treating Physician Rule may have a significant impact on the Commissioner's determination of severe impairments, credibility and the RFC and on the availability of work to Plaintiff in the national economy at Step Five. Based on the reassessment of Plaintiff's severe impairments, credibility, and RFC, the ALJ may find that vocational expert testimony is warranted especially considering the non-exertional impairment of migraine headaches.

This court cannot address the remaining issues with relation to whether or not the impairments of irritable bowel syndrome, depression and anxiety, and chronic fatigue syndrome should be found severe; Plaintiff's credibility; and, the RFC until the ALJ conducts a proper analysis of the treating physicians' opinions with regard to Plaintiff's physical limitations. Once the ALJ conducts a proper analysis with respect to the treating physicians' opinions, he should reassess Plaintiff's severe impairments, credibility and RFC for a proper review. The ALJ must also determine, based on the proper analysis of the above, whether there should be vocational expert testimony. The court refrains from reviewing any further contentions at this time.

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented.

Accordingly, IT IS ORDERED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR

for further proceedings in accordance with this opinion.

                                                  s/Thomas E. Rogers, III

September 12, 2013                     Thomas E. Rogers, III
Florence, South Carolina            United States Magistrate Judge